IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GIORGI GLOBAL HOLDINGS, INC., F&P HOLDING CO., INC., GIORGIO FOODS, INC., and CAN-PACK, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>WIESLAW SMULSKI, MICHAL SMULSKI, and JOHN DOES 1 THROUGH 10,<br><br>Defendants. | CIVIL ACTION<br>NO. 17-4416 |

**MEMORANDUM OPINION**

**Schmehl, J.  /s/ JLS**                                            **March  21, 2019**

**I.      INTRODUCTION**

Plaintiffs filed the instant Complaint alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act, breach of contract, violations of the Computer Fraud & Abuse Act and unjust enrichment. Defendants filed a motion to dismiss, or in the alternative, to stay, arguing that Poland is a more appropriate forum to litigate Plaintiffs' claims, that international comity requires dismissal, that Plaintiffs have failed to show that they have standing to assert certain claims, and that Plaintiffs have failed to state a claim for which relief can be granted on certain claims. In the alternative, Defendants argue that this case should be stayed until the "parallel actions" in Poland are concluded. For the reasons that follow, I will deny Defendants' Motion to Dismiss and/or Stay.

**II.     FACTS**

In 1928, Pietro Giorgi founded Giorgio Foods, a mushroom growing company, in Temple, Pennsylvania. Compl. at ¶ 20.  The company eventually grew to include the manufacture of cans, and by the late 1970s, Pietro Giorgi's son, Frederick Giorgi, had

taken over the company. Compl. at ¶¶ 20–21. In 1976, ownership of Giorgi Foods was transferred to F&P Holding Co., another Pennsylvania company. *Id.* at ¶ 21. Frederick was the Chairman of F&P Holding Co., and he and his son Peter Giorgi owned all of its shares. *Id.*

In 1992, F&P Holding Co. incorporated Can-Pack, a Polish company based in Krakow, to manufacture and distribute food packaging. *Id.* at ¶ 23. Can-Pack grew to include subsidiaries and operations across Europe and Asia. *Id.*

In 2012, following Frederick's death, Peter contributed shares of F&P Holding Co. to form Giorgi Global Holdings, a Delaware corporation. *Id.* at ¶¶ 25, 42, 45. Peter owns all of the shares of Giorgi Global Holdings. *Id.* at ¶ 25.

In 1989, Frederick Giorgi hired Wieslaw Smulski to manage one of F&P Holding's companies in Poland, and Smulski was appointed CEO of Can-Pack. *Id.* at ¶ 26. In 1993, Wieslaw entered into a management agreement with Can-Pack, and was also named Vice President of Giorgio Foods. *Id.* at ¶¶ 26-27. He entered into an employment agreement with F&P Holding Co. and Giorgio Foods in his capacity as Vice President. *Id.* Those employment agreements were renegotiated in 2004 to form three new agreements: the F&P/Giorgio Employment Agreement, the Can-Pack "Phantom Shares" Agreement, and the Can-Pack Management Agreement. *Id.* at ¶¶ 27–28. The Can-Pack "Phantom Shares" Agreement was intended to be a new compensation mechanism for Wiesław. *Id.* at ¶¶ 28, 34, 35. Although he would not actually own any shares of Can-Pack, the agreement allowed him to "cash out," upon a triggering event, an amount equal to the then book value of 15,810 Can-Pack shares. *Id.* at ¶ 35.

Can-Pack's Service Division Operations consisted of (1) three wholly owned subsidiaries that made up its aluminum can Recycling Operation, (2) a wholly owned

subsidiary that comprised the company's Packaging Operation, and (3) business units that made up the manufacturing plants' Spare Parts Operation. Compl. at ¶ 24. These Service Divisions provided support to all Can-Pack subsidiaries. In 2011, Wiesław and other members of the Can-Pack Management Board suggested that Can-Pack outsource the Service Division Operations, which were non-essential services that were being handled internally. *Id.* at ¶¶ 49–50. Wiesław first presented his outsourcing plan to the Can-Pack Supervisory Council, allegedly lying in his e-mail and telephonic communications with the Supervisory Council about his intentions to outsource the Service Division Operations to "workers' companies" through arm's length transactions. *Id.* at ¶¶ 62, 67. Plaintiffs claim that Wiesław actually planned to sell the Service Division Operations at below-market value to companies that he controlled with Michael Zygmunt, a former President of Can-Pack's packaging subsidiary. *Id.* at ¶¶ 66, 74, 76, 77.

The Supervisory Council eventually approved the outsourcing plan, and Wiesław then took control of the assets of Can-Pack's Service Division Operations through a complicated web of self-dealing. Wiesław and Zygmunt convinced Can-Pack to sell the assets of the Service Division Operations to various intermediary companies at below-market values. *Id.* at ¶¶ 102, 105. Wiesław and Zygmunt then allegedly used either closed-end investment funds (which they controlled) or other companies that they owned to take control of the intermediate companies. *Id.* at ¶¶ 103, 106, 111–112. In doing so, Wiesław and Zygmunt successfully acquired control over the assets of each of the three former Service Division Operations. *Id.* at ¶ 112.

Wiesław then transferred the profits into accounts in his name, in the name of his companion, Urszula Moryl, and in the name of his son, Michal. *Id.* at ¶¶ 118, 126, 134. The accounts were housed with financial institutions in Poland, Europe, and the United States. *Id.*

3

Wiesław and Michal then used the funds to purchase business and real estate assets in the United States. *Id.* at ¶¶ 118, 126, 134, 186–194.

In October 2013, F&P Holding Co. and Giorgi Global Holdings commenced an internal investigation that was unrelated to the events that gave rise to this action. *Id.* at ¶ 161. When they arrived in Krakow on October 9, 2013, to inspect Wiesław's computer, he refused to meet them or to submit the computer for forensic imaging. *Id.* at ¶ 162. Wiesław then destroyed data on his computer, and directed other Can-Pack employees to do the same, before he finally submitted his computer for inspection on October 23, 2013. *Id.* Upon discovery of the data destruction, Wiesław's employment at Can-Pack and Giorgio Foods was terminated. *Id.* at ¶ 167.

Extensive litigation in Poland resulted between the parties. On January 31, 2014, Wieslaw sued Can-Pack in Poland for money owed to him under the Can-Pack Management Agreement. *Id.* at ¶ 174. In February of 2014, Wieslaw and others sued Can-Pack in Poland for wrongful termination. *Id.* Can-Pack filed counterclaims against Wieslaw based on the outsourcing of the Can-Pack subsidiaries. *Id*. at ¶ 177. On March 13, 2015, Can-Pack sued Wieslaw for a refund of the amount paid to him for redemption of his phantom shares, and in March of 2016, Can-Pack filed a criminal complaint against Wieslaw for misappropriation of his company-issued computer. *Id*. at ¶ 179.

### III. DISCUSSION

#### A. Forum Non Conveniens

First, Defendants argue that this matter should be dismissed because Poland is a more convenient venue for Plaintiffs' claims. Under the doctrine of *forum non conveniens*, a district court may, in the exercise of its sound discretion, dismiss the case where: (1) an alternative forum has jurisdiction to hear the case; and (2) when trial in the

4

plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate due to the court's own administrative and legal problems. *Windt v. Qwest Comms. Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008). "When considering a motion to dismiss on *forum non conveniens* grounds, a district court must first determine whether an adequate alternate forum can entertain the case." *Id.* at 189-90. If an adequate alternate forum exists, the court must next determine the appropriate amount of deference to be given to the plaintiff's choice of forum. *Id.* at 190. After the court has determined the amount of deference due to the plaintiff's choice of forum, it must balance the relevant public and private factors. *Id.* "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds." *Id.* The party moving to dismiss on grounds of *forum non conveniens* "bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lony v. E.I. Du Point De Nemours Co.*, 886 F.2d 628, 632 (3d Cir. 1989) (*citing Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)).

Accordingly, the first step is to determine whether an adequate alternative forum exists in which this matter can be heard. A party to a lawsuit can satisfy this element of the *forum non conveniens* analysis "when the defendant is amenable to process" in the alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981). A forum may be deemed to be an inadequate forum under the "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory." *Id.* A forum is also inadequate where the alternative forum does not permit litigation of the subject matter of

the dispute, or where a plaintiff cannot access evidence essential to prove a claim. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 n. 14 (3d Cir. 2010).

In this matter, Defendants argue that Poland is an adequate alternative forum because they are amenable to process in Poland, as Wieslaw and Michal are dual citizens of Poland and the US and Wieslaw resides in Poland. Docket No. 17 at p. 10. Further, Defendants argue that "the parties have presumptively agreed that these claims are cognizable in Polish courts because Can-Pack has been litigating them there for the past four years." *Id.* at p. 11.

In response, Plaintiffs argue that they cannot obtain evidence critical to their case if they are forced to litigate this matter in Poland. In the instant action, Plaintiffs asked for and obtained orders seeking to preserve Defendants' email and documents related to Defendants' alleged US activities. Docket Nos. 6, 7 and 8. Plaintiffs allege that they sought discovery of these emails in one of the Polish cases, were denied access to them and have no method by which they can obtain this evidence in Poland. Docket No. 19 at pp. 11-12.

As stated above, one of the rare examples where a forum in which Defendants are amenable to process is inadequate is when "a plaintiff cannot access evidence essential to prove a claim." *Eurofins*, 623 F.3d at 161 n. 14. In the instant matter, Plaintiffs allege Defendants engaged in asset-stripping, money laundering, document theft and document destruction and that critical evidence supporting these allegations can only be produced in the U.S., as the Polish court has no authority to compel Defendants to provide access to their email accounts or to sanction Defendants for their failure to do so.

In opposition to this argument, Defendants argue that a mere difference in US and Polish discovery procedures does not make the Polish forum inadequate. However, that is not the argument being made by Plaintiffs. Plaintiffs are not arguing that due to limited Polish discovery, they cannot obtain evidence. Rather, Plaintiffs are arguing that they completely lack all access to essential proof of their claims if they are forced to litigate in Poland.

I find that if Plaintiffs were forced to litigate this matter in Poland, they would be unable to access the evidence that was preserved by this Court when the instant matter was filed. Defendants have failed to meet their burden of persuasion on this prong of the *forum non conveniens* analysis; therefore, this foreign forum, Poland, is inadequate in this matter despite defendants being amenable to process there. As I find Poland to be an inadequate forum for this case, it is not necessary for me to proceed any further with the *forum non conveniens* analysis. Defendants' motion to transfer this matter to Poland is denied based upon the first prong of the analysis.

### B. International Comity

Defendants also argue that the doctrine of international comity calls for dismissal of this action in favor of the ongoing Polish litigation. Comity is "a nation's expression of understanding [that] demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). A court may not dismiss a case on comity grounds unless 1) the cases in question are "parallel," and 2) doing so would be consistent with "domestic public policy." *Lexington Ins. Co. v. Forest*, 263 F.Supp.2d 986, 1002 (E.D. Pa. 2003). Dismissal for reasons of international comity is appropriate

only in "extraordinary circumstances." *Paraschos v. YBM Magnex Int'l, Inc.,* 2000 WL 325945, at *6. Such circumstances include: (i) duplicative litigation, (ii) inconvenience of the domestic forum, (iii) the governing law, (iv) the order in which jurisdiction was obtained, (v) the relative progress of each proceeding, and (vi) the "'contrived nature' of the domestic claim." *Id.* Defendants argue that "nearly identical litigation has been going on in Poland since 2014" and dismissal of this case on international comity grounds is therefore warranted.

For purposes of international comity, an action is parallel to another when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Paraschos,* 2000 WL 325945, at *5. There must be a "substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case." *Id.* In this matter, it is undisputed that the U.S. parties and the Polish parties are not substantially the same. U.S. Plaintiffs Giorgi Global Holdings, F&P Holding Co. and Giorgio Foods, Inc. are not involved in any of the Polish litigation, nor is Defendant Michal Smulski. Defendants attempt to circumvent this fact by arguing that "although the American Plaintiffs are legally distinct from Can-Pack, the injuries that they allege in the Complaint derive entirely from Can-Pack's injuries," and that the Complaint "fails to identify an independent basis for their claims." Docket No. 17 at p. 16.

I find this argument to be unpersuasive and factually distinguishable. Plaintiffs are pursuing claims in the US action for injuries that are distinct from the damages suffered by Can-Pack in Poland. Further, the parties in Poland are not litigating substantially the same issues as the US parties. This instant action is a RICO action with Pennsylvania

8

common law claims and a claim under the Computer Fraud & Abuse Act. None of these claims are being litigated in Poland, nor is any Polish claim similar to any of the US claims. The Polish cases do not involve any U.S.-based conduct, unlike the instant action.

As there is no parallel action pending in Poland containing the same or similar counts or allegations, this matter cannot be dismissed on international comity grounds. Accordingly, Defendants' Motion to Dismiss is denied on that issue as well. Further, I find no reason to stay this matter until the Polish litigation has concluded.

### C. Standing to Assert RICO Claims

Defendants also argue that Plaintiffs do not have standing to assert civil RICO claims because the injuries alleged in their Complaint are foreign injuries. It is true that a private right of action for RICO claims does not apply extraterritorially, and that a private RICO plaintiff must allege and prove a domestic injury to its business or property. *RJR Nabisco, Inc. v. European Cmty.,* 136 S.Ct. 2090, 2106 (2016). However, there is a difference in opinion among courts regarding what constitutes a domestic or foreign injury under RICO. Some courts consider "where the plaintiff resided at the time of the alleged injury and where their property or business was located, among other factors," in making this determination, while others consider "the location of the RICO conduct." *Humphrey v. GlaxoSmithKline, PLC*, 2017 WL 4347587 (E.D. Pa. Sept. 29, 2017).

Defendants argue that under either school of thought, Can-Pack cannot establish standing to bring a civil RICO claim because it is a Polish company and its "injuries were felt exclusively overseas." Docket No. 17 at p. 21. Defendants claim that Can-Pack was located in Poland, and therefore the claims involve foreign injuries, or in the alternative, that all of Wieslaw's alleged conduct took place in Poland and therefore the injuries are

foreign in nature. However, a review of Plaintiffs' Complaint shows that it adequately alleges that Defendants intentionally laundered illegal proceeds into U.S. corporate equity, U.S. real estate and U.S.-created trusts, owned and controlled by Defendants, in order to prevent Plaintiffs from finding the illegal proceeds and to use U.S. legal protections to thwart Plaintiffs' ability to recover the illegal proceeds. Compl. at ¶¶ 186-97, 247-53. I find that these allegations are sufficient to set forth domestic injuries suffered by Can-Pack in this matter under either of the two schools of thought.

As to the remaining Plaintiffs, Defendants argue that "the American Plaintiffs do not have standing to assert their civil RICO claims because their injuries are all derivative of Can-Pack's injuries." Docket No. 17 at p. 21. I disagree with this contention, as the American Plaintiffs allege in the Complaint that F&P Holding and Giorgio Global Holdings "incurred significant costs, beginning in 2013 and continuing thereafter, for the internal and computer forensic investigations that eventually uncovered Mr. Smulski's fraudulent scheme." Compl. at ¶¶ 287, 290, 314, 338. These injuries are not derivative of Can-Pack's injuries. Further, as for Giorgio Foods, Inc., Plaintiffs' Complaint alleges that Giorgio Foods was damaged as it paid Wieslaw's annual U.S. salary of $520,000 plus benefits, all while Wieslaw was scheming to defraud Giorgio Foods' sister companies. Compl. at ¶ 288. At this point, I find this allegation is also a sufficient domestic injury to provide Giorgio Foods with standing in this matter.

### D. Failure to State a Claim for RICO Violations

Lastly, Defendants argue that Plaintiffs have failed to state a claim for RICO violations at all as to Michal and in part as to Wieslaw. Specifically, Defendants argue that Plaintiffs' Complaint fails to show harm that is distinct from the injuries allegedly

10

sustained due to the racketeering activity itself, and that Plaintiffs fail to allege that Michal was part of the RICO enterprise. Upon reviewing Plaintiffs' Complaint, I find that Plaintiffs have alleged distinct injuries separate and apart from the injuries suffered from the racketeering itself. Compl. at ¶¶ 314, 334-338. I further find that Plaintiffs have sufficiently pled allegations as to Michal to connect him to the enterprise in question. Compl. at ¶¶ 207, 347. Accordingly, Defendants' motion to dismiss on this issue is denied without prejudice to refile as a motion for summary judgment at the close of discovery.

## IV. CONCLUSION

For all of the reasons set forth above, Defendants' motion to dismiss or in the alternative, to stay is denied. Accordingly, Defendants shall answer Plaintiffs' Complaint within twenty (20) days.