IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GIORGI GLOBAL HOLDINGS, INC., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>WIESLAW SMULSKI, *et al*,<br><br>Defendants. | CIVIL ACTION<br>NO. 17-4416 |

## **MEMORANDUM OPINION**

**Schmehl, J.**  /s/ JLS                                                                                                September    22, 2022

### I.     **BACKGROUND**

Plaintiffs filed the instant suit against Defendants alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act, breach of contract, violations of the Computer Fraud & Abuse Act and unjust enrichment. Specifically, the Complaint alleges that Wiesław Smulski violated RICO and his employment contract in a scheme to sell Can-Pack's recycling, packaging, and spare parts divisions, at below-market values, to companies and closed-end investment funds that he controlled. Plaintiffs allege that with his son, Michał Smulski, Wielsaw Smulski hid and laundered proceeds of the scheme in accounts in Poland, Europe, the United Arab Emirates, and the United States. Discovery has been ongoing for some time, and Plaintiffs filed a motion in which they asked the Court to enter a default judgment against Defendants for their discovery abuses.

For the reasons that follow, Plaintiffs' motion is granted in part. I find Defendants have engaged in discovery misconduct; however that misconduct does not rise to the level of a sanction in the nature of entry of default. Rather, I will find that certain facts are established

in favor of Plaintiffs as detailed below, as well as order an adverse inference against Defendants in further proceedings and trial.

II.     **HISTORY OF DISCOVERY**

Plaintiffs allege that Wiesław Smulski had already deleted data from his laptop regarding the alleged outsourcing scheme before the Complaint was filed in this matter and that they were therefore concerned he would refuse to produce relevant documents in his possession or would delete them. Accordingly, on June 7, 2019, Plaintiffs moved for an order compelling Defendants to provide the contents of their email accounts to Defendants' U.S. counsel for review. Dkt No. 42. On June 24, 2019, I denied this motion without prejudice, but noted that Plaintiffs "may raise this issue again at a later date after Defendants have responded to discovery if Plaintiffs believe Defendants' discovery responses are inadequate." Dkt No. 47. On October 1, 2019, in response to another motion to compel, I directed Defendants to produce "all documents and communications responsive to Plaintiffs' discovery requests from all of Defendants' [Internet Service Provider] accounts." Dkt No. 55.

On November 20, 2019, I ordered the parties to "be in substantial compliance with all previous discovery orders entered in this matter by December 20, 2019," and warned Defendants that failure to comply with my production orders "may result in sanctions upon further application to the Court." Dkt No. 64. Plaintiffs claim that despite these numerous orders directing them to do so, Defendants have produced no emails or other documents regarding Wieslaw's connection to the entities allegedly used to execute the outsourcing scheme, Green Ventures, Ltd., IPOPEMA 67, PAPC, S.A., Pol-Pack Service, S.A., and IGM Engineering Services SP. z o.o.

In October of 2013, sometime before this litigation commenced, a company called Stroz Friedberg was retained by Can-Pack to conduct a forensic analysis of Wieslaw Smulski's laptop. Stroz Friedberg discovered only six user-created files on the laptop, although some fragments and emails still existed and were recovered by Stroz Friedberg. These recovered documents included emails to and from Wieslaw that clearly showed his involvement in IPOPEMA 67 and PAPC.

Further, Plaintiffs sent Hague Convention requests to the Republic of Malta where Green Ventures, Ltd is registered. The Maltese Office of State Advocate sent documents in response to the requests that show Wiesław's creation and control of Green Ventures, Ltd. despite his denials that he created the company. Despite numerous Court Orders directing them to produce all documents and emails related to Green Ventures, Ltd., IPOPEMA 67, PAPC, S.A., Pol-Pack Service, S.A., and IGM Engineering Services SP. z o.o., Defendants produced no documents or emails whatsoever relevant to these companies, including the emails discussed above that were recovered from his laptop, as well as the documents produced by Malta.

Next, on January 31, 2019, Plaintiffs requested that Defendants produce documents sufficient to identify all foreign financial institutions and on June 24, 2019, I ordered Defendants to produce within thirty days documents sufficient to identify "[a]ll foreign financial institutions, banks, investment companies, closed-end investment funds, private investment funds, or trust companies Defendant and/or anyone acting at his direction has used for financial transactions and/or monetary transfers relevant to the claims in Plaintiffs' Complaint at any time from January 1, 2011, to February 27, 2018." Dkt No. 47. On July 24, 2019, Defendants identified the names, but not the addresses, of

eighteen foreign financial institutions. On October 1, 2019, I ordered Defendants a second time to properly identify their foreign financial institutions. Dkt No. 55. Thereafter, Plaintiffs moved for an order compelling Defendants to produce foreign account transaction statements from the outsourcing period. On April 22, 2020, I ordered:

> Within 60 days of the date of this Order, Defendants shall take all steps that are necessary to produce all documents that are responsive to Plaintiffs' discovery requests, covering the time period of January 1, 2011, to February 27, 2018, from all foreign financial entities identified in Exhibit A to Defendants' Responses to Plaintiffs' First Set of Interrogatories, including, if required to comply with this Order, personally visiting the appropriate offices of such financial entities.

Dkt No. 75. In response to Defendants' June 22, 2020, production of financial records, Plaintiffs retained an expert to conduct a forensic analysis and comparison of the transactions listed in Defendants' foreign bank record production and their U.S. bank records. That analysis revealed a significant amount in transfers from foreign financial institutions that were not reflected in the foreign bank record production. These foreign-to-U.S. transactions originated primarily from two Polish banks, BNP Paribas Bank Polska, S.A., and Fortis Bank Polska, from 2011 to 2015. Defendants produced no records that identified the source of and details about this significant amount of Polish-to-U.S. money transfers from the two Polish banks during the time when Wieslaw was allegedly outsourcing Can-Pack companies to himself. Defendants did produce records from BNP Paribas Bank Polska, S.A., but those were from 2016, over two years after Wieslaw's termination from Can-Pack.

Defendants' production included records from Alior Bank in Poland. Each page of the Alior Bank records bore a footer identifying a page in sequence totaling 688 pages. The last page of Alior Bank records in Defendants' June 22 production was labeled page

"589 of 688." Defendants did not produce pages 590 to 688. Nor have Defendants produced any records whatsoever from Wiesław Smulski's four accounts at two banks in the United Arab Emirates: HSBC Middle East Limited and Emirates NBD Bank.

On November 24, 2020, Plaintiffs filed another motion to compel, this time for an Order compelling Defendants to comply with the Court's April 22, 2020, production Order. Dkt No. 102. On June 22, 2021, I ordered:

> Within 30 days of this Order, defendant Michał Smulski shall produce all documents required to be produced under the Court's Order dated April 22, 2020 (ECF No. 75), including, but not limited to: (i) records of all transactions in the period from 2011 to 2015 involving defendants' accounts at BNP Paribas Bank Polska, S.A., and Fortis Bank Polska; (ii) the missing pages 590-688 of the Alior Bank records production; and (iii) records of all transactions involving defendants' accounts at HSBC Middle East Limited and Emirates NBD Bank.

Dkt No. 117. I informed Defendants that if they failed to comply, sanctions would be considered under Rule 37(b). *Id.* Defendants failed to produce any additional foreign bank records by the July 22, 2021, deadline.

On September 27, 2021, Michał Smulski filed a declaration entitled "Supplement to Defendants' Statements Pursuant to the Court's June 22, 2021 Order." Dkt No. 127. In the declaration, he described how he went to banks in Poland in August 2021 seeking financial records (a month after the Court's production deadline) but obtained no documents. He reported that he was denied access to the missing Alior Bank documents because he did not have the complete 26-character bank account number, BNP Paribas denied him access to Wiesław's account records because Michał "did not have a court certificate identifying [him] as the late Mr. Wieslaw Smulski's heir, and IPOPEMA Investment Fund Company, S.A., denied him access to Wiesław's IPOPEMA 67 account records based on Polish secrecy law and because Michał is only the Executor of Wiesław

5

Smulski's Estate. Dkt No. 128. The September 27, 2021, declaration included no information about any effort since the June 22, 2021, production Order to obtain Wiesław's UAE bank account records.

On February 2, 2021, Defendants informed the Court they could not obtain Wiesław's Polish bank records because Michał had not yet been determined to be Wiesław's heir, stating:

> Michal is willing to do what he can to satisfy these institutions that he is the heir, if it comes to be that he is, but as explained in the Sur-Reply, that is not a quick process in Poland. Until then, however, Michal has no power to compel these financial institutions to do anything at all.

Dkt No. 114. On February 17, 2021, Michał then made a filing in a probate court in Poland formally rejecting his status as Wiesław's heir. Dkt No. 131, Ex. A. The Court learned of Michal's rejection of his status as Wieslaw's heir in September of 2021 when the Polish courts allowed Can-Pack to have access to this information.

Accordingly, as of today's date, Defendants have failed to produce any financial records at all from Wieslaw's two accounts in the UAE, records of transactions in the period from 2011 to 2015 involving Defendants' accounts at BNP Paribas Bank Polska, S.A., and Fortis Bank Polska, and the missing pages 590-688 of the Alior Bank records production, despite Court Orders compelling them to do so. Based on all the above conduct, Plaintiffs seek sanctions in the form of an entry of default judgment.[1]

### A. Legal Standard

Rule 37(b) of the Federal Rules of Civil Procedure governs the Court's discretion to impose sanctions on a party for discovery-related misconduct. The Court may:

---

[1] Plaintiffs also seek sanctions based upon Wieslaw's 2013 and 2014 alleged destruction of documents contained on his laptop. However, as Defendants have not yet had an opportunity to produce an expert report that refutes this alleged destruction, sanctions are denied on this issue at this stage of the proceedings.

(i)        direct that designated facts shall be taken as established in favor of the prevailing party;

(ii)       prohibit the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters in evidence;

(iii)      strike pleadings in whole or in part;

(iv)      stay further proceedings until the order is obeyed;

(v)       dismiss the action or proceeding in whole or in part;

(vi)      render a default judgment against the disobedient party; or

(vii)     treat the failure to obey the order as a contempt of court.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In addition, the Court must order the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by the failure to comply, unless the failure was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C).

The list of available sanctions under Rule 37(b)(2)(A) is not exhaustive, and the decision to impose sanctions is "generally entrusted to the discretion of the district court." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018). That discretion is limited in only two ways: "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id*. (*quoting Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995)).

"It is well-settled that the Court is permitted, under appropriate circumstances, to exercise its discretion to control its docket by imposing the ultimate sanction of dismissal or default for a party's failure to comply with discovery orders or to otherwise unjustifiably delay disposition of the action." *Am. Motorists Ins. Co. v. Beaver*, 1994 WL

597612, at *3 (E.D. Pa. Nov. 2, 1994). However, a default judgment is a "drastic sanction" reserved for the most egregious cases. *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 867-68 (3d Cir. 1984). In *Poulis v. State Farm Fire and Cas. Co.*, the Third Circuit required courts to consider and make findings on the following factors when determining whether dismissal is an appropriate sanction for a party's failure to comply with discovery orders:

>   (1) the extent of the party's personal responsibility;
>
>   (2) the prejudice to the adversary caused by the failure to respond to discovery;
>
>   (3) the party's history of dilatoriness;
>
>   (4) whether the party's conduct was willful or in bad faith;
>
>   (5) the effectiveness of sanctions other than dismissal; and
>
>   (6) the merits of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984); *Stevens v. Westmoreland Eq. Fund, LLC*, 2018 WL 10715459, at *2 (E.D. Pa. Dec. 19, 2018). There is no "magic formula" or "mechanical calculation" that automatically warrants a default judgment, *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008), and "no single *Poulis* factor is dispositive." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

### B. Discussion

I will proceed to apply the *Poulis* factors to the instant set of facts to determine whether an entry of default is just.

#### 1. **Extent of Defendants' personal responsibility**

There is no question that Wiesław Smulski and Michał Smulski are personally

responsible for their failure to comply with the Court's Orders to produce documents. Wiesław never produced any emails or documents showing his undeniable connections to and control over the entities and closed-end investment company that were involved in Can-Pack's Recycling, Packaging, and Spare Parts Operations. On October 1, 2019, he was ordered to produce all responsive "documents and communications" from his email accounts, dkt no. 55, but he produced no emails or documents showing his connection to the outsourcing entities. Thereafter, on November 20, 2019, the Court ordered the parties to be in substantial compliance with "all previous discovery orders" by December 20, 2019. Dkt No. 64. Wieslaw still produced no emails or documents showing his control over the outsourcing entities. As the fragments of documents found on Wieslaw's computer and the production from Malta show, these documents exist and the failure to produce them is the fault of Defendants.

Both Defendants are likewise personally responsible for the failure to produce Wiesław's foreign bank records relative to the outsourcing period. Wiesław agreed to produce these records in his 2019 discovery responses and he had ample opportunity to do so before the onset of the COVID-19 pandemic. Instead, he chose not to produce them and improperly claimed that Polish law forbid him from doing so. On April 22, 2020, Defendants were ordered to produce the foreign bank records within 60 days and were directed to "take all steps that are necessary … including, if required to comply with this Order, personally visiting the appropriate offices of such financial entities." Dkt No. 75. Defendants did not produce the missing bank records by the June 22, 2020, deadline. A year later, on June 22, 2021, Defendants were again ordered to produce the foreign bank

9

records in thirty days. Defendants still failed to produce the missing Polish bank records and have produced no UAE bank records at all.[2]

After the Court substituted him as the Executor of Wiesław's Estate, Michał argued he was unable to comply with the Court's April 22, 2020, Order until a Polish court designated him Wiesław's heir. On February 2, 2021, he assured the Court that he was "willing to do what he can to satisfy these institutions that he is [Wiesław's] heir." Dkt No. 114. However, on February 17, 2021, Michał made a filing in Polish probate court that rejected his status as Wiesław's heir. Dkt No. 131. This rejection permanently prevents Michał from complying with the Court's April 22, 2020, and June 22, 2021, Orders. Accordingly, both Wieslaw and Michal were, and Michal remains personally responsible for the failure to comply with these important discovery requests.

### 2. Prejudice to Plaintiffs by Defendants' Failure to Produce Discovery

"[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial" to warrant sanctions under Rule 37 and *Poulis. Ware v. Rodale Press*, Inc., 322 F.3d 218, 222 (3d Cir. 2003). A party's "continued failure and refusal to produce documents which are not only responsive … and the subject of court orders but which are indisputably relevant" is "obviously prejudicial." *Am. Motorists Ins. Co. v. Beaver*, 1994 WL 597612, at *4 (E.D. Pa. Nov. 2, 1994). Evidence of prejudice includes "the irretrievable loss of evidence" and the "costs expended obtaining court orders to force compliance with discovery." *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873-74 (3d Cir.1994); *Northstar Fin. Cos. v. Nocerino*, 2013 WL 6061349 (E.D. Pa. Nov. 15, 2013)

---

[2] Defendants attempt to rely on Polish bank secrecy laws as their excuse for their failure to comply with this Court's discovery orders is unpersuasive, as I have already ruled that Defendants could not rely on Polish privacy laws to avoid production of relevant documents in this matter. Dkt No. 80.

10

(entering default judgment where defendant repeatedly violated court orders to produce documents).

In the instant matter, Wiesław's refusal to produce his emails showing his connection to the outsourcing entities and his refusal to produce his foreign bank records from the outsourcing period has served to prevent Plaintiffs from obtaining evidence of the alleged outsourcing scheme. The files that Stroz Friedberg recovered from its 2013 forensic copy of Wieslaw's hard drive are the only remaining fragments of the documents that clearly existed at one point and tied Wieslaw to the companies that were involved in Can-Pack's spare parts, recycling and packaging operations. As Wieslaw failed to produce any emails or foreign bank records regarding his involvement in outsourcing, Plaintiffs are clearly prejudiced. In addition, Wieslaw raised a highly questionable objection to the taking of his own deposition, which delayed his deposition until he was too sick to testify, causing further prejudice to Plaintiffs.

Further, when Michał was substituted as Executor of Wiesław's estate, Michał became the party responsible for complying with the Court's production Orders. Michal has produced none of Wiesław's outsourcing emails, and apparently eliminated his ability to produce Wiesław's foreign bank records by rejecting his status as Wiesław's heir. This behavior by both Wieslaw and Michal leads the Court to the conclusion that their objective was to prevent Plaintiffs' from obtaining evidence to assist them in proving the existence of an outsourcing scheme. Clearly, this type of misconduct has resulted in prejudice to Plaintiffs and their ability to prove their case.

### 3. **Defendants' History of Dilatoriness**

"Extensive or repeated delay or delinquency … in complying with court orders"

11

constitutes a history of dilatoriness." *Adams*, 29 F.3d at 874; *see also Smith ex rel. El Ali v. Altegra Credit Co.*, 2004 WL 2399773, at *6 (E.D. Pa. Sept. 22, 2004). On October 1, 2019, Defendants were ordered to produce all responsive emails by November 15, 2019. Dkt No. 55. Defendants failed to timely comply with the October 1, 2019, Order. On November 20, 2019, Defendants were again ordered to comply by December 20, 2019. Defendants again failed to timely comply. Over two and a half years have elapsed since the second production deadline.

On April 22, 2020, Wiesław was ordered to produce his missing foreign bank records within sixty days, by June 22, 2020. Dkt No. 75. Defendants failed to timely comply. A year later, on June 22, 2021, Michał as Executor was ordered to produce the records in thirty days, by July 22, 2021. Dkt No. 117. Michal failed to timely comply. Over a year has elapsed since the second production deadline. This frequent and repeated failure to comply with orders shows a history of dilatoriness.

    **4.**  **Whether Defendants' Conduct was Willful or in Bad Faith**

Willfulness involves intentional, calculated, or self-serving behavior. *Adams*, 29 F.3d at 875. Wieslaw's obstruction of the discovery process in this matter was calculated to deprive Plaintiffs of evidence of the alleged outsourcing scheme. It was clear that emails existed that showed some connection between Wieslaw and the companies involved in outsourcing, but he refused to produce them. He also refused to produce bank records from the outsourcing period, despite being ordered to do so. This was all done in a self-serving attempt to keep the evidence of outsourcing away from Plaintiffs. Similarly, Michal's conduct in violating the Court's discovery orders was self-serving and calculated. After being told by banks that he could obtain records only if he were

Wieslaw's heir, approximately six weeks later, he rejected his status as Wieslaw's heir in Poland. In short, Michal created the impediment that prevents him from producing the relevant bank records. This conduct of both Wieslaw and Michal was willful.

### 5. The Effectiveness of Sanctions Other Than Dismissal

Although Plaintiffs make a good case for the entry of a default judgment in this matter, I cannot grant a sanction of that severity that would "in effect" be the ultimate sanction. As all of the evidence that Defendants refused to produce from Wieslaw's emails was linked to his connection to the companies involved in the outsourcing process, I find that the most effective sanction would be to establish as a fact that Wieslaw is connected to those entities. As to the foreign bank records that Defendants refused to produce, I find that the granting of adverse inference would be the most effective sanction. Accordingly a jury in this matter shall be permitted to conclude that the financial records from Wieslaw's UAE bank accounts, BNP Paribus and Fortis Bank for the years 2011 to 2015 and pages 590 to 688 of the Alior Bank records contain information regarding money transferred that would have been harmful to Defendants.

### 6. The Merits of the Claim or Defense

In *Poulis*, the Third Circuit noted that a "claim … will be deemed meritorious" when the allegations of the pleadings, if established at trial, would support recovery…." 747 F.2d at 869-70. "Where a claim has previously withstood a motion to dismiss, it has been found meritorious." *Drozd v. Padron*, 2015 WL 507167, at *10 (M.D. Pa. Feb. 6, 2015). On March 21, 2019, I denied defendants' Rule 12 motion to dismiss. Dkt No. 30. Accordingly, Plaintiffs' claim will be deemed meritorious.

For all the reasons set forth above, I find that a sanction is warranted for Defendants' discovery misconduct. However, the entry of default is too extreme in this matter, as although Defendants' actions were clearly intentional, the complexities raised by the fact that the operative facts in this matter are centered in Poland, as well as the COVID-19 pandemic and the interaction of foreign laws and customs, all may have contributed to these issues. As I am required to enter a sanction that is "just" and specifically related to the "claim which was at issue," I find entry of default is too severe of a sanction to be just. Rather, as all the emails and documents Defendants refused to produce were related to Wieslaw Smulski's connection to and involvement with the companies that were involved in the outsourcing, a sanction related to that specific issue is more appropriate than a blanket entry of default. Therefore, I find that the fact that Wieslaw Smulski had a connection to and/or ownership interest in Green Ventures, Ltd., IPOPEMA 67, PAPC, S.A., Pol-Pack Service, S.A., and IGM Engineering Services SP. z o.o. is established, and Defendants shall not oppose that fact or present any evidence to the contrary at the trial of this matter. Further, as to the foreign financial records that Defendants failed to produce, I will grant an adverse inference.

### III. CONCLUSION

For all the foregoing reasons, Defendants have clearly engaged in discovery misconduct and sanctions shall be entered as described in the attached order.